**482**

Irvin **RAPOPORT**, Plaintiff,

v.

**Rose RAPOPORT, also known as Joan Sirott, Defendant.**

Civ. No. 1834.

United States District Court
D. Nevada.

Aug. 23, 1967.

Morton Galane, Las Vegas, Nev., for plaintiff.

Gordon W. Rice and Leo P. Bergin, Reno, Nev., for defendant.

## OPINION AND DECISION

THOMPSON, District Judge.

■ This action under the Declaratory Judgment Act (28 U.S.C. § 2201 et seq.) was commenced by Irvin Rapoport, a citizen of the Commonwealth of Pennsylvania, against Rose Rapoport Sirott, a citizen of the State of Nevada, for a declaration of the marital status of the parties. Jurisdiction of this Court is predicated on diversity of citizenship and the amount in controversy (28 U.S.C. § 1332).[1] See: Southard v. Southard (2 CCA 1962), 305 F.2d 730.

■ On July 6, 1964, defendant was granted a final and absolute decree of divorce by the Second Judicial District Court of the State of Nevada, in and for the County of Washoe. Irvin Rapoport was served by publication and mailing in that action, he then being in Pennsylvania, and he did not voluntarily submit himself to the jurisdiction of the Nevada Court. The Nevada Court found

as a fact that for more than six weeks prior to May 7, 1964, that is, since March 25, 1964, Rose Rapoport had been and still and then was an actual and bona fide resident of Reno, Washoe County, Nevada. Inasmuch as the Nevada Court did not have personal jurisdiction of Mr. Rapoport, this finding is not binding on Mr. Rapoport and the evidentiary basis therefor is subject to reexamination. Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577; Rice v. Rice, 336 U.S. 674, 69 S.Ct. 751, 93 L.Ed. 957.

■ After the divorce on July 6, 1964, Rose Rapoport married George Sirott at Carson City, Nevada, and has continuously since been living with him in Reno, Nevada as a citizen of Nevada, a fact admitted by plaintiff in this action for declaratory relief. This Court now finds from the evidence that since March 25, 1964, Rose Rapoport (Sirott) has been and now is an actual and bona fide resident and citizen of the State of Nevada, domiciled therein, and concludes therefrom that the Second Judicial District Court of the State of Nevada had jurisdiction of the subject matter of the divorce action and that the decree of divorce entered was valid and effective to dissolve the marriage of Irvin and Rose Rapoport. This was the only fact issue tried by this Court.

This is not, however, the whole case. Before moving to Nevada, Rose Rapoport had, on December 19, 1963, filed an action for divorce against Irvin Rapoport in the Court of Common Pleas of Montgomery County, Pennsylvania, Docket No. 63-12802 in said Court. Irvin Rapoport filed an Answer on May 1, 1964. There has been no activity in the action since that time, and it remains pending, untried and undetermined. On May 20, 1964, Irvin Rapoport filed a Complaint in Equity in the Court of Common Pleas in and for the County of Montgomery, Pennsylvania, Docket

1. The jurisdictional amount is supported by the existence of real property in Pennsylvania held in tenancy by entireties in which the Rapoports have a net equity of $25,000. Title to the property is affected if the marriage has been legally dissolved.

No. 64–5660 in said Court. Papers in said case were served on defendant, Rose Rapoport, by service on an adult person at her former place of residence in Lower Merion, Pennsylvania; by service on her attorney, William F. Fox in the divorce action; by service on Gordon W. Rice, her attorney at Reno, Nevada; and by registered letters addressed to several Nevada District Judges. The equity complaint alleged the pendency of the Pennsylvania divorce action, the commencement of the Nevada divorce action, the continuing domicile and residence of Irvin Rapoport and Rose Rapoport in Pennsylvania, and the fraudulent and fictitious nature of her claimed residence in Nevada. The substance of the prayer was that she be enjoined from commencing or prosecuting any divorce action other than the one then pending in Montgomery County, Pennsylvania. A "Preliminary Decree", commonly known as a temporary restraining order, was issued by the Court ex parte in accordance with the prayer. It contained a notice of hearing on Monday, May 25, 1964, at 12:30 p. m. On May 25, 1964, an order was entered fixing the hearing for June 24, 1964 at 1:30 p. m. Similar service was made of this order fixing the new hearing date. On June 24, 1964, the Court entered a decree confirming the preliminary injunction and restraining defendant, Rose Rapoport, accordingly. The decree was served on Rose Rapoport at Reno, Nevada on July 4, 1964. The Court made no findings of fact in support of its decree.

In the order on the motion for summary judgment entered July 5, 1967, this Court said: "In neither the Nevada divorce action nor the Pennsylvania injunction action, however, did the Court have or claim personal jurisdiction over both parties." The plaintiff now contends to the contrary, citing a May, 1967 Pennsylvania decision which was called to this Court's attention on July 10, 1967. Accordingly, the issues of law remaining for determination are whether Rose Rapoport Sirott was personally subject to the jurisdiction of the Pennsylvania Court in the injunction action and, if so, whether the Court there made a binding adjudication of her then residence precluding her from now proving that she was, between March 25, 1964 and July 6, 1964, a bona fide resident of the State of Nevada.

In support of the position that both Irvin and Rose Rapoport were personally subject to the jurisdiction of the Pennsylvania Court in the injunction suit, plaintiff cites Rothman v. Rothman, 425 Pa. 406, 228 A.2d 899. This case involved a direct attack on the service of process in a similar equity injunction suit and the Court held that service on the attorney of record in the pending divorce action was effective to subject the enjoined party personally to the jurisdiction of the Pennsylvania Court because he had already submitted himself and the subject matter of the marital status to that Court. In the light of this opinion, we reluctantly conclude that service on Rose Rapoport's attorney, William Fox, in the Pennsylvania divorce case was effective under Pennsylvania law to subject her personally to the equity injunction as one who was served with process in Pennsylvania. Our reluctance stems from the fact that the *Rothman* case was decided May 3, 1967 and we think that the attorneys who obtained the Rapoport injunction and Mr. Fox did not then believe that effective personal service had then been made on Mrs. Rapoport. When Irvin Rapoport's attorneys wrote William F. Fox on June 17, 1964 to notify him of the hearing fixed for June 24, they said, in part: "We realize that you are not appearing of record, at least as yet, for Rose Rapoport in the above captioned matter * * *." If the status of Mr. Fox as attorney for Rose Rapoport in the Pennsylvania divorce case constituted him her attorney in the equity action, which is the rationale of the *Rothman* case, the wording of the letter is inconsistent with a belief that this was so and would tend to mislead.

■ An equity injunction acts in personam and while the violation of the Pennsylvania injunction may have exposed Mrs. Rapoport to punishment for contempt, the injunction cannot operate to preclude the Nevada divorce court from acquiring jurisdiction of the subject matter and granting a valid divorce. 24 Am.Jur.2d, p. 1152, § 1010.

We have observed that the Pennsylvania equity court made no findings of fact. None were required as a predicate for the injunction because, under the *Rothman* case, the basis for the injunction was the pendency of the Pennsylvania divorce case and the injunction was issued in an effort to protect and preserve the jurisdiction of the Pennsylvania Court over the marital status. The Court in *Rothman,* quoting Wenz v. Earl Wenz, Inc., 400 Pa. 397, 162 A.2d 376, said: " * * * by subsequently instituting suit in the Maryland Court, for annulment of the marriage, (Wenz) contumaciously attempted to circumvent and subvert the authority and jurisdiction of the Lehigh County Court. In such circumstances, a court has not only the power but the duty to thwart such an undertaking by a restraining order adequate to the circumstances." If we rely upon *Rothman* to subject Mrs. Rapoport personally to the jurisdiction of the equity injunction, it is evident that the injunction was a provisional and not a final decree and was issued in aid of the jurisdiction of the Pennsylvania divorce court. If *Rothman* does not control this case, then Rose Rapoport was not subject personally to the jurisdiction of the Pennsylvania equity court and no finding, express or implied, that the Court may have made regarding subject matter jurisdiction would have any controlling effect here (see the *March Estate* case, discussed infra).

■ For the Pennsylvania divorce court to have had continuing jurisdiction over the marital res, it need have found only that one of the spouses, Irvin Rapoport, was a bona fide domiciliary of Pennsylvania. Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279. Thus, the bona fides of Rose Rapoport's Nevada domicile was not necessarily involved in the determination to issue the injunction and a finding on that issue by the Pennsylvania equity court is not necessarily implied.

Hindsight persuades us that if Irvin Rapoport had accelerated the Pennsylvania divorce action to trial and final decision with vigor equal to that used in bombarding Rose Rapoport, her attorneys, the Attorney General of Nevada, and four Nevada District Judges with injunctive orders, he might have accomplished his objective of retaining an estranged wife within the matrimonial web.

Since the trial, defendant's counsel have provided us with a copy of the opinion of the Supreme Court of Pennsylvania, Middle District, filed June 30, 1967, 231 A.2d 168, in the case "Estate of Howard R. March, Sr., Deceased, Appeal of Charles March, Janet L. Austine, Gladys E. Neiman, Executors and Legatees, Appellants." The four-squareness of the facts of the *March* case with those here is an almost incredible coincidence. In *March,* the Court accorded no weight to the issuance of the injunction but placed its decision squarely on a determination of the bona fides of the Nevada domicile as a question of fact. And in *March,* the Court did not follow or even discuss the *Rothman* rationale that the pendency of a dormant divorce action which March had brought in Pennsylvania subjected him personally to the authority of the injunction process by service on his Pennsylvania attorneys.

■ We conclude that the Pennsylvania Courts have never adjudicated the bona fides of Rose Rapoport's Nevada domicile and that the finding we have made sustaining her Nevada domicile in support of the Nevada divorce decree requires a declaration that the Rapoport marriage has been legally dissolved.

Judgment will be entered accordingly.